MRS. MARY PATTERSON BY NEXT FRIEND v. MRS. FANNIE
M. HUMPHRIES, EXR.

[58 South. 772.]

WILLS. *Trust. Construction. Precatory Trust. Mandatory Trust.*
  Where the will of a testator by the first item left all of his prop-
  erty to his wife for her natural life, subject to the limitations
  and charges thereinafter set out, and by the second item pro-
  vided that should the income of the estate permit, of which he
  constituted his executrix the judge, he desired aid extended any
  member of his family who may be overtaken by adversity, and
  by the fourth item provided that should a certain daughter be-
  come dependent and in need he charged his wife who was
  executrix out of the body of his estate to extend to her such
  aid, as the income, in justice to herself and the other dependent
  members of the family, enables her to do but not to exceed the
  sum of three hundred dollars per annum. *Held,* that the words
  employed in item two were precatory and the discretion was
  given the executrix to extend aid to the class mentioned if she
  deemed it wise to do so; but that the provision for his daughter
  in item four was mandatory and might in case of her necessity
  be enforced out of the corpus of the estate.

APPEAL from the chancery court of Lowndes county.
HON. J. F. McCOOL, Chancellor.

Suit by Mrs. H. Patterson by her next friend against
Mrs. Fannie M. Humphries as executrix of the will of
W. W. Humphries deceased. From a decree sustaining
a demurrer to the bill, complainant appeals.

Complainant seeks to fix a charge upon the estate of
her deceased father, W. W. Humphries, for the payment
to her annually of three hundred dollars, and asking a
construction of the will of her said father, which is set
out in full below:

"State of Mississippi, Lowndes County.

"I, W. W. Humphries, of the above county and state,
hereby make, the following as my last will and testa-
ment;

''Item First—After payment of my just debts, I give and bequeath to my beloved wife all of my property, both real and personal, for her natural life, subject to the limitations and charges hereinafter fixed.

''Item Two—I direct that my executrix keep my estate together for her support and the support and education of the younger and unmarried, dependent members of my family, particularly the younger, who by reason of their youth and inexperience are less capable of earning a livelihood. Should the income of the estate permit, of which I constitute my executrix the judge, I desire aid extended any member of my family who may be overtaken by adversity.

''Item Third—I direct that my family residence to be kept up and maintained out of the body of my estate as a home for those mentioned in item second, for at least twenty-one years after my death, and so long thereafter as my wife lives and desires to occupy the same as a homestead. Should my said wife deem it desirable or expedient to sell lots on either side of the residence by way of advancement to any of my children, or to give them building lots, she is fully empowered to make proper deeds.

''Item Fourth—Should my daughter, Mrs. Mary Patterson, become dependent and in need, I charge my wife out of the body of my estate to extend her such aid, as the income, in justice to herself and the other dependent members of my family, enables her to do, but not to exceed the sum of three hundred dollars ($300.00) per annum, payable in such sums and at such times as may be the most convenient, but said payment to cease when the necessity for it no longer exists.

''Item Fifth—Upon the final division of my estate, that is to say after the lapse of twenty-one years, and the death of my wife, I give to my two youngest children, Edward M., and Fanny Moore Humphries, all of my residence property, that is to say, the residence and

square upon which the same is located in fee simple, as also all of the furniture therein, which I own, most of which however, belongs to their mother.

"All of my other property, both real and personal, I give share and share alike to my other children, save to my daughter Mrs. Mary Patterson, to whom I have advanced what I consider equal to one thousand dollars, and charge her by way of advancement with that amount.

"Item Sixth—My life policy will more than pay my debts. The residue I give to my beloved wife, as also any excess of income arising from estate after paying the charges herein before fixed upon it.

"Item Seven—Should my executrix elect to give by way of advancement to any one of my children a building lot on the square given to Edward M. and Fannie Moore Humphries, then and in that event, I desire a charge placed and fixed upon the share of such child or children as will fairly indemnify the two younger ones and secure to them prompt payment upon the division of the estate.

"Item Eight—Should any unlooked for necessity or emergency arise for the sale of any portion of my estate, my executrix hereinafter named is hereby clothed with full power, to execute the proper deed or bill of sale.

"Item Nine—In the event, any of my children become dissipated, disrespectful or disagreeable at home, I expressly desire that they absent themselves from the family circle until such habits and manners are thoroughly reformed, and with the view of preserving the sancity of my home, I urge upon and clothe my executrix with the authority to enforce the above injunction.

"Item Ten—I appoint my good and much beloved wife as guardian of my children, and as executrix of this my last will and testament, and expressly direct that she shall not be required to give in either capacity any bond or security or to make any inventory of my estate, or make any report to the chancery court, as to her ex-

penditures, or the management of my estate. The simple
probate of this will, and the statutory notice to creditors
to probate their claims, is all that is necessary, or that I
wish done.

"Item Eleven—If my younger boys and daughter
prove to be studious and sober, and evince a disposition
to receive a classical education, I urge my executrix to
regulate family expenditures to this end. I enjoin upon
all of my boys to aid each other in becoming good men,
to aid their mother in every way they can. I commend
her and their sisters to their solicitude and manly affec-
tion. Confidence in the Christian integrity and affection
of my wife causes me to know that this trust will be
faithfully executed.

"This is in my handwriting, upon pages one, two, three
and four, with my name endorsed upon the margin of
each page and hereto subscribed this the 26th day of
January, A. D. 1899.

                              "W. W. Humphries."
Codicil:

                    "Columbus, Miss., Jany. 21, 1903.
'I insert in the fifth line of Item III (after the words
'after my death'), until the marriage of my youngest
child. My daughter, Mrs. Mary Patterson, having re-
turned some of the articles she is charged with, I only
charge her with $500.00 instead of ($1,000.00) one thou-
sand dollars and wish her to pay no interest on same.

                              "W. W. Humphries.
"January 21, 1903.

"Until my boys marry, I wish them to retain their
rooms in the family home.

                              "W. W. Humphries."
Codicil:

                  "Columbus, Miss., December 14, 1903.

"Upon the sale of my plantation (out of the proceeds)
I desire my son Henry H, to receive one thousand dol-
lars, in excess of my other children. In the event of my

wife's death, I desire my son Henry and kinsman E. T. Moore and C. W. Evans to manage my estate.

"W. W. Humphries."

*J. A. Orr,* for appellant.

The question involved is whether Humphries' will is precatory or mandatory. Is it the duty of the executrix, now that the daughter has become destitute and reduced to absolute poverty, to contribute the three hundred dollars contemplated by the father, or has the widow the discretion to gratify her selfishness and withhold from this once favorite child of the father, the sheerest necessities of life?

The attention of the court is particularly directed to the fourth item of will, which will be found on page five of the record. The second item of the will is general in its terms and applies to all the different members of his family. That general provision may be susceptible of a different construction to that which must be placed upon the fourth item as we insist.

I insist that the fourth item in its terms is mandatory and whenever the condition of the daughter has been so reduced to want and poverty as presented in the bill, it becomes the imperative duty of the executrix to contribute the three hundred dollars annually.

I have thus presented to the court briefly my case. It is not necessary to multiply words to this learned court and will content myself by citing a few authorities. See Am. Dig., 1890, p. 3871, Sec. T., No. 266. This is the digest published by the West Publishing Co. for 1890.

The attention of the court is also specially called to the case of *Lucas* v. *Lockhart et al.* 10 Smedes & Marshall, 471, 18 Atl. 102.

*Sturdivant, Owen & Garnett,* for appellee.

Unquestionably it was the desire of the testator, W. W. Humphries, to entrust to his wife the management

of his entire estate and that she should carry out his
wishes as best she could, and in her discretion, and free
from the control of any court, and to hold to the contrary
would be as said above to "violate instead of carry out
the intent of the parties."

In *Burnes* v. *Burnes*, 137 Fed. 781, 70 C. C. A. 357, the
court says: "The test of a precatory trust is the clear
intent of the testator to imperatively control the con-
duct of the party to whom the language of the will is
addressed, by the expression of the desire, and not to
commit to his discretion the exercise of the option to
comply or refuse to comply with the suggestion made."

In the case at bar it is clear that this amount was not
to be paid to appellant, unless in the discretion of the
executrix the income from the estate justified it, as the
first provision was for the widow and the younger and
dependent members of the household, and for the main-
tenance of the home for all of the class mentioned in
the will. It was necessary in making provisions of this
kind that would conflict possibly one with the other that
confidence in the discretion of some one to manage it
should be placed; and it is clear that it has been placed
in the widow and to be exercised by her as she thought
best for all the various children.

In *McDuffee* v. *Montgomery*, 128 Fed. 105, the court
says: "The will of a testator gave his residuary estate
to his wife absolutely, with a request that at her death,
or before, if she should think best, she give to his son a
certain sum or any sum she might think best. The will
then provided: "I further request that she, my said
wife, shall assist any of my brothers or sisters if they
should be in need, and at her decease she should divide
her property among them as she may think best." Held,
that the will gave the wife an absolute estate in the prop-
erty, and did not create a precatory trust in favor of
the testator's brothers and sisters."

In the case of *Van Gorder* v. *Smith*, 99 Ind. 404, the
court says: "Where a testator declared in his will that

it was his desire that his wife use certain moneys to provide a comfortable home for his two sons and herself, and might from time to time as she may deem proper and just, divide the property bequeathed to her among the children after first becoming satisfied that it would not be squandered, such precatory words were nothing more than recommendations that she should use and dispose of the property discreetly as her judgment might dictate for her own and the benefit of her sons, and did not create a trust."

The case of *Rector et al.* v. *Alcorn et al.,* 88 Miss. 788, 41 South. 370, is instructive in that case as in the one at bar; the testator expressed confidence in his wife to deal justly with his children, and this evidence of the fact that he wished every thing left to the sound discretion of his wife.

In the case of *Post* v. *Moore,* 73 N. E. 482, 181 N. Y. 15, 106 Am. St. Rep. 496, testator bequeathed all of his property to his wife and her heirs and assigns, and appointed her sole executrix. A separate clause of the will stated that it was testator's wish and desire that his wife pay three hundred dollars a year to his sister. Held not to create or charge such a trust upon the estate as will support an action by the sister to enforce it."

The notes in the 106 Am. St. Rep. 522, *et seq.* shed much light upon precatory trusts; the question always is, Did the testator intend to leave to the discretion of the devisee whether or not the amount was to be paid?

In the case at bar it is clear that the aid to be extended to Mrs. Patterson was contingent upon there being sufficient to provide for the first objects of the will, the support of the widow, the support and education of the young and dependent members of his family, and the maintenance of the home for the same; and clearly all this was to be left to the wife in her good judgment and discretion, to manage all for the best interest of the members of the family, and without the control of the courts.

We submit that the testator in this case left this property to his wife for life, for her support and the care of the younger and more dependent children, with full confidence in that wife, and the courts will let that discretion remain where the testator placed it in the widow.

COOK, J., delivered the opinion of the court.

Appellant filed a bill in the chancery court of Lowndes county asking a construction of her father's will. The appellee, Mrs. Fannie M. Humphries, was made executrix of the will, and by the terms of the will she was devised a life interest in the entire estate of the testator, her husband, "subject to the limitations hereinafter fixed." Appellant was the daughter of the testator by a former marriage, was married, and residing in the state of Maryland at the time of testator's death. Appellant, who was complainant below, charged in her bill that item fourth of her father's will was mandatory, and should be construed to mean that she was entitled to a legacy of three hundred dollars per annum, dependent alone upon her becoming "dependent and in need." The bill charges that "her condition in life for years has been one of want, poverty, and dependence, coupled with an incurable disease and intense physical suffering; that since the death of her father she has been continuously in need of money, and that she is now financially embarrassed;" and further, that she has never received one dollar from her father's estate. She further says that her husband had some years ago suffered an almost fatal injury, and in consequence he is unable to support her. From the allegations of the bill it appears that the estate was very valuable, consisting of fertile and valuable plantations, money, and handsome city property. To this bill a demurrer was interposed, assigning one ground why the executrix should not be required to answer, viz.: "There is no equity on the face of the bill. Said bill does not charge any facts entitling complainant to relief."

Item fourth of the will reads as follows: "Should my daughter, Mrs. Mary Patterson, become dependent and in need, I charge my wife out of the body of my estate to extend her such aid as the income, in justice to herself and the other dependent members of my family, enables her to do, but not to exceed three hundred dollars ($300.00) per annum, payable in such sums and at such times as may be most convenient, but said payments to cease when the necessity no longer exists." Of course, the allegations of the bill must be taken and considered as literally true, and, when so considered, do the facts stated and admitted entitle complainant to any relief?

The complainant was not a member of the father's household at the time of his death, or at the time the will was written. She, having married, was residing in Maryland with her husband, and, so far as the allegations of the bill disclose the facts, she was in good health and living in comfort when the will was written. As she sues by next friend, we are permitted to infer that she was a minor at the time the bill was filed, although the bill does not so state. The executrix of the will, and owner for life of the entire estate, was not the mother of complainant, but had a family of her own. The family mansion—for mansion it was, according to the bill—is occupied by the executrix and her family, and they are enjoying the income and usufruct of a valuable and productive estate. On the other hand, the only and beloved daughter of her father, the pledge of another and earlier love, is far away in Maryland, incumbered with the care and sorrow of a crippled husband, herself suffering from an incurable disease, and her body racked by the pangs of physical pain. The gaunt wolf of poverty stands at the door of this young woman, the daughter of a distinguished lawyer, who, in his last will and testament "charged" his executrix "out of the body of my estate" to extend to her a helping hand whenever misfortune, poverty, and dependence should overtake her. Has the

time arrived when aid is needed, when even the grudging hand of stinted charity would recognize a deserving case?

Certainly it was not, and is not, contended that the conditions provided for by the will are not present. Then why should not a court of conscience require an answer to this bill? The reasons are given by the brief and argument of counsel for appellee, and may be reduced to one theory, i. e., the will leaves to the executrix the sole discretion of determining when the income of the estate runs beyond the needs of herself and the younger members of the family. Upon her judgment of the needs of herself and family the needy and afflicted daughter must depend, and when the executrix decides that question adversely to the appellant, it was the intention of the testator that no court should have the power to review her decision, no matter how unjust and how unwise it might be. In a nutshell, although it is admitted that this afflicted daughter is in dire need and suffering all the ills which follow grinding poverty, coupled with physical suffering, and although it is admitted that the estate is large and valuable, the door is closed, and the courts cannot enter, because, by the will, the executrix is clothed with the power to render a decree from which there is no appeal this side of Heaven.

If the position of counsel is correct, if their construction is the proper construction of the will, their conclusions cannot be shaken. The intention of the testator is the law which must govern the courts, and this intention must be gathered from the words employed by the testator in writing his will. The courts cannot make a will. That power rests with the testator to direct and control his estate, so long as he does not undertake to accomplish something forbidden by the laws and public policy of the state. There can be no difference about the canons of construction. The intent of the testator as expressed in the will must be the sole guide of the courts.

We have quoted item fourth (and now direct the reporter to print the entire will in his report of the case), and we will now refer to the last clause of item 2, reading as follows, viz.: "Should the income of my estate permit, of which I constitute my executrix the judge, I desire aid extended any member of my family who may be overtaken by adversity." Here the testator expressed a desire that any member of his family overtaken by adversity should be aided out of the income; but he also expressly confers upon his wife the power to decide when the income will permit this desire to be carried into effect. In this item he was providing for any member of his family overtaken by adversity, and he uses the words "I desire," and goes still further and says to his executrix, You shall be the judge of whether the income will permit this be done.

He had just provided for the younger members, and this, of course, referred to the others. But did it refer to complainant in this bill? We think not. The will clearly recognizes as the family those members who were at home in Mississippi, and, when testator speaks of " my family," it is evident that he had in mind the children at home; and if adversity should overtake any of that group, he expresses a desire that aid be extended to them out of the income of the estate, leaving to his executrix to decide whether or not the income would permit this to be done. Adversity is opposed to well-being or prosperity, and it has been said, "Adversity is not without comforts and hopes." So this lawyer, when he wrote his last will and testament, choosing his words with full knowledge of their shades of meaning, and thinking some one of his family might not prosper, but might lag behind in the race of life, he expressed a desire that his wife would give a lift to any member of the family so overtaken by adversity; but she was to be the judge when the income would permit her to do so. He was then anticipating that some one

of the family might be unlucky and fail to keep his head above the water. Undoubtedly the words employed in item 2 were precatory, and the discretion was given to the executrix to extend aid to the class mentioned, if she deemed it wise to do so.

His daughter, Mrs. Patterson, was put in a separate class, and item 4 refers to her alone. She was married, and, besides, while it was only necessary to merely suggest to a mother his wish that her children should be given a lift whenever they should meet with adversity, he no doubt advisedly used a stronger word when he penned item 4, providing for the possible need and dependence of his daughter by another marriage. He had the deepest affection and the most abiding confidence in his wife, but he also knew that he was then providing for one who could not claim the same affection from his executrix that nature implanted in her heart for her own offspring, or for the members of the family who still hovered about the roof-tree. It will be noted that he fixed the conditions when aid should be extended to Mrs. Patterson, and he did not confer upon the executrix the authority to decide when the income would permit a sale of a part of the estate to realize money to meet this charge. This is the significant and controlling feature of this charge upon his estate, and is easily differentiated from the precatory words employed in item 2. This item clearly fixes a charge upon the body of the estate for the purpose of relieving Mrs. Patterson in her present need and distress. The limit of the money to be appropriated to that purpose is fixed at three hundred dollars per annum, and the amount to be given, limited as it is by this maximum, is not left to the judgment of the executrix; but the chancellor must be guided by the amount of the income and the reasonable needs of the other dependent members of the family in fixing the amount to be paid appellant.

The executrix should be required to pay to Mrs. Patterson such amount as will, in the judgment of the chancellor, fairly ameliorate her troubles, even though the money will have to be raised out of the body of the estate. Such was the mandate of the testator, and his will is the law of the case. We have gathered from the will and the allegations of the bill that Mrs. Patterson is the sole living issue of testator's first marriage; but this makes no real difference, as the language of item 4 must be construed as mandatory.

Reversed and remanded with leave to answer within sixty days after the filing of the mandate in the chancery court of Lowndes county.

*Reversed and remanded.*